**TUILEFANO M. VAELA`A, Claimant,**

**v.**

**VALENTINO TAUFA`ASAU, UTAIFEAU T. MAUGA ASUEGA, FANENE F. KAVA, SEALI`IUTU F. MAUGA, and MAILO ATONIO, Counter-claimants.**

**[In re Matai Title "MAUGA" of the Village of Pago Pago]**

High Court of American Samoa
Land and Titles Division

MT No. 12-98

December 14, 2001

Before KRUSE, Chief Justice, LOGOAI, Chief Associate Judge, ATIULAGI, Associate Judge and TAUANU'U, Temporary Associate Judge.

Counsel: For Tuilefano M. Vaela`a, Afoa L.S. Lutu & Arthur Ripley, Jr.
   For Valentino M. Taufa`asau, *Pro Se*
   For Utaifeau T.M. Asuega, Asaua Fuimaono
   For Seali`iutu F. Mauqa, Aitofele T. Sunia
   For Mailo Atonio, Faiivae A.G. Galea`i

OPINION AND ORDER

## Introduction

This longstanding matter had its beginnings in May 13, 1998, when Tuilefano M. Vaela`a (Tuilefano) filed his claim to succession to the vacant *matai* title Mauga of Pago Pago. The Territorial Registrar posted the claim publicly for the requisite 60-day period in accordance with the requirements of A.S.C.A. § 1.0406. The claim in turn drew the filing of succession counterclaims from Valentino Mauga Taufa`asau ("Taufa`asau") on July 10, 1998; from Utaifeau Tasi Mauga Asuega ("Utaifeau") and Fanene Fetaiaiga Kava ("Fanene") on July 13, 1998; and from Lavea Seali`iutu F. Mauga ("Lavea") and Mailo Atonio ("Mailo") on July 14, 1998.

The Territorial Registrar then referred the matter to the Secretary of Samoan Affairs who duly convened the parties for settlement conferences pursuant to A.S.C.A. § 43.0302. Without a family settlement, the Secretary of Samoan Affairs certified an irreconcilable dispute to the Land and Titles Divisions under A.S.C.A. §43.0302(a).

Trial commenced herein on February 28, 2000,[1] with the evidentiary presentation of the parties concluded on March 3, 2000. However, on March 6, 2000, the date and time anticipated for rebuttal evidence and final arguments, the parties jointly requested the Court to postpone the proceedings to allow them one more opportunity to attempt a family

---

[1] By this time, Fanene had withdrawn her counterclaim, which was previously dismissed in open court, but she continued to file additional material with the Clerk.

resolution. Given the relative importance of the *matai* title Mauga,[2] the motion was granted, and the proceedings adjourned *sine die*, with the high expectation of a *fa`a Samoa* conclusion.[3]

The effort was to no avail. The communal will to move forward and select a new Mauga titleholder was, it seems, nonexistent or, at best, feeble from the outset. After some six months of family inertia, one of the parties felt compelled to file a motion to reinstate judicial proceedings citing the family's unwillingness to at least call a meeting as previously represented to the Court. The motion was denied and the parties were advised that the Court would not reconvene unless the family met, as promised, to meaningfully reconsider a successor *matai*. Following a further four months of family inaction, one family member then took it upon himself to publicly advertise the calling of a family meeting. This action finally prompted a family gathering at *Gagamoe[4]* on February 3, 2001.[5] As above noted, the extrajudicial exercise proved futile.

## Discussion

The Court, having heard the evidence and considered the parties' post-trial written arguments, makes the following findings pursuant to the criteria set out in A.S.C.A. § 1.0409:

*1. Hereditary Right—A.S.C.A. § 1.0409(c)(1)*

■ In the vast majority of *matai* title disputes before the Court, a candidate's hereditary right has been calculated by tracing his lineage to

---

[2] *See Taufa`asau v. Manuma*, 4 A.S.R. 947, 949 (App. Div. 1967) ("Historically, the Mauga is known to be among the oldest and most influential *matai* titles of American Samoa. Available historical records dating from the earliest contacts of the Europeans with eastern or American Samoa contain numerous references to the Mauga.") The preeminence of the Mauga title is, according to one account, traced to the time of the Tongan occupation in Samoa, some seven centuries ago. *See Amerika Samoa*, Capt. J.A.C. Gray, United States Naval Institute, 1960.

[3] Under A.S.C.A. § 3.0242(b), the Land and Titles Division is accorded certain procedural flexibility consistent with the exigencies of justice and convenience.

[4] One of the Mauga family's traditional meeting sites.

[5] Candidate Mailo explains family inertia in terms of "sub-family" politics over the issue of who should call family meetings. The matter, however, appears quite clearly to have become a non-issue after somebody took the initiative to use the public media to call a family meeting.

his nearest ancestor holding the title. *See In re Matai Title Leiato*, 3 AS.R.2d 133, 134 (App. Div. 1986). This formula was almost universally applied until 1984 when the Court in *In re Matai Title Sotoa*, 2 A.S.R.2d 15 (Lands & Titles Div. 1984), suggested an alternative method of calculation as being more desirable. Under the rule in *Sotoa*, a candidate's blood relationship is to be determined by reference to his relationship to the original titleholder, and not by descent to the nearest past titleholder.[6] The Court's reasoning was that "every new titleholder does not start a new line of heredity." *Id.* at 15.[7]

The *Sotoa* rule, however, is not of general application, particularly where family genealogical understanding is contentious, *In re Matai Title Lolo*, 25 A.S.R.2d 175, 176 (Land & Titles Div. 1994); *In re Matai Title Tuaolo*, 28 A.S.R.2d 137, 140 (Land & Titles Div. 1997), and where family history suggests a contrary tradition and understanding of entitlement. *In re Matai Title Tauaifaiva*, 5 A.S.R.2d 13, 14 (Land & Titles Div. 1987); *see also In re Matai Title La`apui*, 4 A.S.R.2d 7, 10 (App. Div. 1987) (Murphy, J., concurring) ("Whether a family traces hereditary rights directly to the original title holder or to the last living holder of the title is . . . a matter of custom and tradition.").

■ With the matter at bar, we note that in past Mauga succession disputes before the Court, hereditary entitlement was determined by using the traditional formula, namely, percentage of a candidate's blood relationship to a former titleholder, as opposed to the original titleholder. *See Asuega v. Manuma*, 4 A.S.R. 616, 624 (Trial Div. 1965); *Sialega v. Sal*, MT No. 04-82 (Land & Titles Div. 1983). Secondly, contemporary Mauga family history suggests two family branches separate and distinct to the lineage established by the original titleholder Mauga Mulivai. *See Asuega*, 4 A.S.R. at 625. Further, it is clear on the evidence that this family development evolved prior to the establishment of the government and the enactment of A.S.C.A. § 1.0409(c), which restricts eligibility only to those candidates with blood ties. As this Court previously noted in *In re Matai Title "Mulitauaopele"*, 16 A.S.R.2d 63, 82-83 (Land & Trial Div. 1990), the legislative adoption of the "best hereditary criterion of § 1.0409(c) did not empower the Court to disenfranchise a family line

---

[6] A variation of the rule employs blood relationship to the nearest common ancestor titleholder.

[7] It has also been suggested that the "Sotoa rule" is more equitable in that it "avoids discrimination against clans which have not held the title for several generations but whose members, according to the tradition in many families, remain entitled to a fair chance at each new vacancy and perhaps even to some affirmative credit on the theory that each clan should have its turn at the title." *In re Matai Title "Laie"*, 18 A.S.R.2d 35, 37 (Land & Titles Div. 1991).

who obtained the title hundreds of years prior to the enactment of the [A.S.C.A. § 1.0409(c)], even if the title was not acquired through blood."

Using then the familiar rule of heredity, we find that Taufa`asau is the son of Mauga Iulio Taufa`asau, and is therefore 1/2; Lavea is the grandson of Mauga Palepoi and is therefore 1/4; Tuilefano is the great-grandson of Mauga Lei and is therefore 1/8; Utaifeau is also descended from Mauga Lei, who is his second great-grandfather, and is, therefore, 1/16.

Mailo's blood claim of 1/16, given by tracing his relationship to the original titleholder Mauga Mulivai, is problematic. While there was little dispute from the other parties as to Mailo's entitlement, and while the evidence showed that Mailo family members have participated in past affairs of the Mauga family, we find that while Mailo is entitled, his claim, however, to 1/16 entitlement is unsupported. His claim of heredity makes him the second great-grandson of the original titleholder. This is implausible when viewed against the intervening generations attested to by genealogy supplied by the other parties. Moreover, Mauga family history, as alluded to by Mailo, pegs the original titleholder Mauga Mulivai to a time frame around the conclusion of the Tongan wars, circa A.D. 1600.[8] (*See* Mailo's Closing Arguments, at 7.) There are clearly generational gaps in the family tree supplied us. Moreover, Mailo's pedigree also lists an intervening titleholder, Mauga Sivauea Sagaiga, a view which is singularly held and conspicuously at variance with the genealogy submitted by the other candidates. While widely varying versions of family history are not uncommon in *matai* title disputes, especially when dealing with oral tradition that approaches the realm of legend, the discrepancy in this instance is nonetheless noteworthy.

We conclude on this criteria that Taufa`asau prevails over Lavea, who prevails over Tuilefano, who prevails over Utaifeau, who prevails over Mailo.

*2. Clan Support—A.S.C.A. § 1.0409(c)(2)*

On this issue, the parties are in agreement on the number of clans; there are three. The evidence further bears out another important point of consensus; that is, the Mauga clans, as they are known today, are not defined in terms of the lineage(s) started by children of the original titleholder. Although there is some divergence in view as to labels assigned to identify each clan, the evidence clearly shows common

---

[8] This history, incidentally, coincides with some written accounts. *See* fn. 2, *infra.*

274

awareness of three distinct family branches labeled in terms of geographic distribution. Conveniently, reference was freely made to one family branch identified as being those pertaining to *Gagaxnoe,* while another as being those family members pertaining to *Siufaga,* and yet another as being those family members pertaining to *Maiva.* Each of these locations also contains a family guest-house site.

The *Gagamoe* side gave rise to titleholders from the lineage established from Mauga Mulivai, the reputed original titleholder; the *Siufaga* side identifies those from the Mauga Pulumatala line, who are said to have obtained the title as a reward for past heroic service; while the *Maiva* side, identifies those from the Mauga Manuma line which came into being through adoption. *See generally Asuega v. Manuma,* 4 A.S.R. 616.

While there were many family meetings' called to select a *matai,* none of these meetings produced a majority of clan support for any one candidate. If there was anything to be seen from the evidence on the issue of clan support, it is that family meetings were not exactly utilized to select a successor *matai.* With each unyielding stance taken, the goal at these family meetings simply appeared to be ensuring against a family consensus on any one candidate. Indeed, some candidates did not even bother to attend any pre-court family meetings, while others attended only sporadically. Moreover, the parties' exercise in continuing judicial proceedings in this matter proved to be nothing more than unproductive posturing as family meetings were not even called until there was prodding from the Court.[9]

---

[9] This sort of strategy, now prevalent with most ranking *matai* succession disputes, seems to underscore one thing only, and that is the common reality that there is the well-beaten path to the courthouse. But the converse of this observation is the emerging reality that the Judicial Branch is more and more evolving into being the preferred "*matai* picker," with Samoan families increasingly abdicating their traditional role.

Law reform efforts recurrently come and go before the Fono without any readily apparent solution to the present avowedly unsatisfactory state of affairs; judicial appointments and the rank suspicion that goes along with an unpopular, albeit legally correct, court determination. For this reason, law reform efforts could at least be redirected to explore *matai* selection alternatives. The focus does not have to be centered on the option of removing the decision-making function from an indecisive family in favor of the courts, but on keeping decision-making within the family by way of an alternative decision-making process.

If a family, for any reason, is unable or unwilling to utilize the selection process handed down by their forebears, where the model is open

We find that no candidate garnered the support of the majority of clans of the Mauga family.

### 3. Forcefulness, Character and Personality, and Knowledge of Samoan Customs — A.S.C.A. § 1.0409(c)(3)

Under this criterion, evaluation and assessment of the candidates is necessarily a comparative exercise, varying in emphasis from case to case. The task is not always easy especially when presented with a slate of very capable people, while at the same time the Court is statutorily directed to examine personal traits that, in part, appeal to personal observation. *See Reid v. Tafalele*, 4 A.S.R. 458, 463-64 (Trial Div. 1964); *Fagau v. Tulei*, 4 A.S.R. 490, 493 (Trial Div. 1964); *Asuega v. Manuma*, 4 A.S.R. at 629 (The Court's consideration includes "personal demeanor, presence of mind, the clarity, speed and correctness with which answers were given, candidness, the ability to stand up to rigorous cross-examination, the education, the self-confidence, and other qualities which are reflected from the speech and behavior of the candidates, matters which can be assessed only from the personal observation of each individual candidate . . . ."). However, "[l]eadership ability, honesty, education, public service, involvement in church and village affairs, and previous experience as a matai are some of the factors which aid in meeting this criterion." *In re Matai Title Leaeno*, 25 A.S.R.2d 4, 8 (Land & Titles Div. 1994).

To these ends, the Court here has not only had the benefit of firsthand observation of each of the candidates as they testified, but of reviewing each personal history as recounted both on the stand and in final written arguments, in some cases not without a sprinkling of self-aggrandizement. Each candidate testified as to his particular contribution and service to church, family, and village, as well as to educational and vocational background. We have also seen certain shortcomings as developed on cross-examination and from personal observation.

Claimant Tuilefano pointed to, among other things, his early career with the United States Marine Corp, together with various commendations he

---

discussions upon discussions until a consensus is reached, than an alternative selection process geared to keeping the decision within the family might perhaps be more appropriate, rather than passing the buck onto the court.

Undoubtedly, an alternative selection process will be critically viewed as un-Samoan, but such would be no more Samoan than the current process of leaving it to a panel of non-family members, Associate Judges, who are guided in part by statutory criteria that essentially appeal to the subjective.

received, including a citation for meritorious action during the Vietnam war; his succession to, and service as, the ranking orator Tuilefano of Malaeloa; his three terms as Aitulagi County's Senator in the Legislative Branch; his various government board memberships; and his appointment to the political post of Commissioner of Public Safety. Additionally, Tuilefano lists business enterprises with which he is involved.

Counter-claimant Taufa`asau, who appearing pro se acquitted himself admirably in his own representation, appraised the Court of his 32 years of "outstanding and creditable" service to the United States Government, National Weather Service, attaining the "Gold Medal" award, and his education towards attaining his career goals. He now enjoys a well-earned retirement. He argues that while certain of the other candidates can similarly lay claims to having held good government positions with the territorial government, he contends that their positions were more an incident of leading *matai* status rather than indices of personal merit.

Utaifeau urges an assessment of his character and personal qualities against his background of a stable family life, successful family business enterprises, together with his longstanding and continuing presence and service within the family and village. In his service to the family, he has given generously of his own time, money, equipment, and assets to, among other things, the family guesthouse and many *fa`alavelave* (family affairs). Likewise, he has equally donated time, money, equipment and assets to village community projects. As the Utaifeau, appointed by Mauga Ioane, he has been instrumental in promoting the village's standing, and pride, in the world of *fautasi* (longboat) racing and intra-village rugby. While conceding the breadth of Mailo's knowledge of Samoan culture, Mailo having published a book on the subject, Utaifeau contends that, because of his continual firsthand experience with family matters, he is better situated with respect to the more pertinent customs and traditions of the Mauga family, and he is more familiar with the family's communal landholding and assets.

Lavea directs us to a personal resume which includes his successful completion of a college education, Bachelor of Arts, his short military service, his leadership skills with the Aoa village *aumaga* (untitled men's organization), resulting in three consecutive Samoan cricket crowns. He has also had a varied career with the American Samoa Government in all its three branches, serving three terms in the House of Representatives, Probation work with the High Court of American Samoa, and as liaison officer for the Department of Public Safety. In his capacity as the Lavea he has served as family spokesman for his many extended family ties, including the Mauga family. In all his endeavors, Lavea stresses his commitment to service.

Counter-claimant Mailo's background is varied. His early career was education related, involved with both teaching and administration. As a product of the early government scholarship program, where he successfully completed postgraduate studies, Mailo experienced firsthand the program's shortfalls. Later he was appointed by Governor Haydon to reassess and revamp the whole program to make it more student-friendly. His extensive government career ended with his serving a term as Associate Judge of the High Court, from which he recently retired. Throughout his work life, Mailo has also operated a number of businesses, including a grocery store, a building contractor, a restaurateur and tavern operator, taxi operator, apartment owner and, more recently, commercial taro farming in the State of Hawaii. He has held the Mailo title of Fagatogo for many years and is a leading official of the Roman Catholic Diocese of Pago Pago, Samoa.

In our assessment, we find that while Mailo prevails on the consideration of knowledge of Samoan custom, we rank Utaifeau slightly ahead of a very strong field on the considerations of forcefulness, character, and personality. His superior business skills and industry; his leadership record with the village aumaga as the Utaifeau; his benevolence as evidenced by the regularity of his significant contributions in time, property, and money to family and village, his honesty and integrity, his unassuming manner and his sense of humility, has, in our view, spoken most persuasively in terms of his personal traits and personal potential.

We find that Utaifeau prevails on this consideration.

*4. Value to Family, Village, and Country—A.S.C.A. § 1.0409(c)(4)*

Under this heading we find that no one candidate stands out decisively from the others in terms of value to country. In their own career paths and endeavors, we are satisfied that all of the candidates have contributed creditably to the general welfare of the people and country. With regard to the considerations of value to family and village, while each candidate is able to point to specific instances of *tautua* (traditional, service) to either family, church, or village, we find that Utaifeau's contribution to both the Mauga family and the village of Pago Pago stands out as more consistent and conspicuous over the claims of the other candidates. Utaifeau, in our view, better personifies the proverb *"O le ala i le pule o le tautua."* Moreover, he has lived in the village for most of his life and has been actively involved in the affairs of the village and family. His familiarity with family needs and members is preferred. *See Aano v. Sitau*, 2 A.S.R. 107, 110-11 (Trial Div. 1940); *Tuinei v. Ieliko*, 2 A.S.R. 117, 123 (Trial Div. 1940). Although Taufa`asau grew up, and has returned to live, in the village after an extensive absence because of education and off-island duty stations, he has been involved in village

278

and family affairs to a much lesser extent than Utaifeau.

We rate Utaifeau first on this criterion.

### Conclusion & Order

Based on the foregoing, we hold that Utaifeau is qualified to hold the title Mauga as he prevails on the third and fourth statutory criteria although preceded by Taufa`asau, Lavea, and Tuilefano on the first. The second criterion is discounted.

The Territorial Registrar shall, in accordance with A.S.C.A. § 1.0409(b), register the *matai* title Mauga, attached to the village of Pago Pago, in candidate Utaifeau Tasi Asuega.

It is so ordered.